[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Greenwich Planning and Zoning Board of Appeals denying an application to subdivide property in an historic district. The plaintiffs are E. Don and Eileen Smith, the owners of the subject property.
In early 1987 the plaintiffs applied to the Greenwich Planning and Zoning Commission (hereinafter "Commission") for approval to subdivide their property into three lots. The Commission considered the proposal, and advised the Smiths to proceed to final subdivision plan subject to fourteen conditions being resolved prior to final submission. (Return of Record #4, page S). In September of 1988 the Smiths submitted their final subdivision plan to the Commission (Return of Record #4, page P), which the Commission resolved to deny after considering it at a meeting held in November of 1988.
Pursuant to Section 103(a) of the Greenwich Charter (Return of Record #8(b)(6)), the plaintiffs appealed the Commission's decision to the Greenwich Planning and Zoning Board of Appeals (hereinafter "Board") (Return of Record #1). Public hearings on the subdivision plan were held on April 19 and May 3, 1989, at which the Board reviewed the proposal de novo, pursuant to 103(a) of the Greenwich Charter. (Return of Record #s 6, 7, 8-0, 9, 10, 11, 12). Notice of these hearings was published in the Greenwich Time on April 7, 12 and 28, 1989. (Return of Record #s 6 and 11). On May 15, 1989 the Board denied the Smiths' proposal (Return of Record #14); notice of the decision was mailed to them on May 16 (Return of Record #15) and was published in the Greenwich Time on May 17 (Return of Record #16).
Pursuant to Section 104 of the Greenwich Charter and Section8-28 of the Connecticut General Statutes, the Smiths brought this appeal CT Page 3313 to superior court. The appeal was commenced on May 31, 1989 by service on the defendant Board through its authorized officers (see Sheriff's return of Service) and the complaint was filed with the court on June 6, 1989. The Historical Society of the Town of Greenwich and Anita de Lesseps Keefe were made parties-defendant to this appeal in September, 1989, and the complaint was amended subsequent thereto. All defendants have answered the complaint, and all parties have filed memoranda of law. The record was returned to court on August 31, 1989 except for several large exhibits, which were returned on October 24, 1990, the date the appeal was heard by the court. The court finds the appeal is timely, and there are no procedural grounds for sustaining or dismissing this appeal.
This appeal involves a proposed subdivision in the Mill Pond Historic District in the Town of Greenwich. The historic district was established in 1975, pursuant to Conn. Gen. Stat. 7-147 et seq. (Return of Record #8p). A study committee appointed by the Representative Town Meeting conducted an extensive study of the Strickland Road area of Cos Cob, including meetings with owners of real property expected to be included in the District, and an on-site inspection by a staff member of the Connecticut Historical Commission (Return of Record #8p). The study committee recommended creating an historic district in the Strickland Road area, and the committee's report was approved by both the Connecticut Historical Commission and the Town Planning and Zoning Commission. (Return of Record #8p). The committee held a public hearing on the proposed district, at which all but one of the owners of real property in the district were represented. Among the reasons given by the committee for recommending creation of the district were its considerable cultural and historic significance; the fact that the area "constitutes a group of houses, in a compatible setting, which, taken as a whole, visually expresses modes of living representative of the early American and Victorian periods"; and the facts that the houses in the area had retained a high degree of integrity and no visual or other intrusions compromised the area's character. (Return of Record #8p).
The Representative Town Meeting adopted the ordinance creating the historic district in December of 1975. (Return of Record #13(u)(3)). The original district consisted of fourteen properties, including that now owned by the plaintiffs (Return of Record #8q). Seventy six percent of the affected property owners approved creation of the district. (Return of Record #13dd). In 1978 the district was enlarged, after a vote by the residents, to include the the eleven properties in Mill Pond Court (Return of Record #13u). The plaintiffs at that time owned property at One Mill Pond Court. (Return of Record #13u).
In 1984 plaintiffs purchased the subject property (Return of Record #8(b)7), and, based on their previous ownership of property within the historic district, it can be inferred that they knew the subject property was within the district. In addition, the deed to plaintiffs' property contains the following language: CT Page 3314
 Said premises are conveyed subject to . . . [r]egulations imposed by reason of the fact that the premises are part of a historic district as established by the Town of Greenwich. . . .
(Return of Record #8(b)7). Plaintiffs' property is situated in the heart of the historic district (Return of Record #8q) and consists of a 33,032 square foot parcel of land which contains one residential dwelling and a two-story detached barn. (Return of Record #4). The portion of Strickland Road in which the subject property is situated is characterized by sweeping front lawns. (Return of Record #s 8(E) (Y).
The subdivision plan denied by the Board proposes dividing the property into three lots, each in excess of 7500 square feet (Return of Record #4 P-10), with over 4800 square feet reserved for parks and recreation purposes. (Return of Record #4 P-1). The proposed lot one is currently open space comprising plaintiffs' front lawn. (Return of Record #2). Plaintiffs' plan contemplates converting the barn into a dwelling on lot three, and constructing a new dwelling on lot one. The current dwelling would remain on lot two. (Return of Record #4 P-1).
Subdivision approval in Greenwich generally involves a two-step procedure in which an applicant submits a preliminary plan to the Commission, which generally recommends that the applicant proceed to final plan. (Return of Record #12, pages 88-90). In this case, the Commission studied the Smith's preliminary subdivision plan and advised the Smiths to proceed to final plan subject to the resolution of fourteen points prior to final submission. (Return of Record #4-S). Among these points were the requirements that plaintiffs meet with Historic District Commission to determine an appropriate house location for Lot 1, and apply for a variance relative to the driveway. (Return of Record #4-S). Although plaintiffs met with the HDC it was unable to take a position on house location. (Return of Record #4-R). Plaintiffs' application for a variance for the driveway was denied by the Planning the Zoning Board of Appeals. (Return of Record #4-H).
Plaintiffs' proposal was opposed before both the Commission and the Board. (Return of Record #s 4-E, 4-D, 13-U, 13-V, 13-W, 13-Z, 13-aa, 13-bb, 13-bbb; #12 at pp 25-47, 50-53, 53-57, 57-69, 76-81, 82). This opposition was based on the belief that the proposed subdivision was inconsistent with, and would adversely affect, the Historic District. (Id.) Twenty-three owners of property in the district, as well as the Historical Society, opposed the application. (Return of Record #s 13v and 13aa). The Historic District Commission provided the bulk of the evidence in opposition, and recommended against approval.
The plaintiffs' property is also located in the Coastal Zone as defined by the Connecticut Coastal Area Management Act. See Conn. Gen. Stat. 22a-94. Due to this fact, the subdivision was subject to review under state and local regulations as a coastal subdivision plan. See CT Page 3315 6-266 of the Greenwich Municipal Code. At the hearing before the Board, the Commission presented testimony that the plaintiffs' plan would negatively impact the natural vistas or viewpoints. (Return of Record #7 at pp 73-77). The plaintiffs submitted photographs and a diagram showing sight lines from their side of Strickland Road to Mill Pond. (Return of Record #8J). These photographs show that between Mill Pond and plaintiffs' side of Strickland Road lie the road itself and a row of houses. (Return of Record #8J). The Commission's decision denying the subdivision plan did not contain any reasons based on the location of the property in the coastal zone. (Return of Record #4).
The Board's decision to deny subdivision approval stated the following reasons:
 [1] The proposed subdivision did not meet the purposes of the Subdivision Regulations provided in Section 6-260 thereof. It does not conform to the Town of Greenwich Plan of Development in that it does not meet the basic objectives of preservation of historic and architectural resources. Furthermore, it does not preserve the natural features of the landscape; namely, the historic streetscape.
 [2] Applicants' plan proposed in an Historic District was opposed in testimony and in writing by the Historic District Commission which among other things, oversees erection and alteration of buildings in said district. Such plan was also opposed by residents in the District. The Board finds that the integrity of the Historic District would be violated and the appearance and historic character of the Historic District would be impaired by this plan. The residents who voted to form an Historic District were given assurances of preservation of their historic neighborhood even though they knew certain freedom of future development would be regulated and restricted.
 [3] The applicants were aware of the property's location in the Historic District since that fact is stated in their deed and they formerly resided in this District at another address. The Board concluded that the applicants' development rights are not deprived because other alternatives for development are available.
 [4] The property is located in the Coastal Zone of the Town. Therefore, it is subject to the requirements of the Coastal Area Management Act. The Board finds that the proposed subdivision plan would have an adverse impact on coastal resources because of the alteration of natural features of vistas.
In conducting a de novo review of plaintiffs' proposal the Board acted pursuant to section 103(a) of the Greenwich Charter which provides: CT Page 3316
 (a) The action of the Commission in approving or disapproving any subdivision may be reviewed by the Planning and Zoning Board of Appeals on petition by any Town agency. The Board of Education or the Housing Authority, by any person owning property in the Town, or by the person seeking approval of such subdivision, provided written notice of such petition is filed by the petitioner with the Commission and the Town Clerk within twenty (20) days from the effective date of such action. Upon receipt of such written notice, the Commission shall transmit a record of the proceedings had before it to the Planning and Zoning Board of Appeals which after a public hearing had de novo shall have the power to uphold or reverse such action . . .
 (c) The action of the Planning and Zoning Board of Appeals on a petition for review of a decision by the Planning and Zoning Commission shall constitute the action of the final planning authority of the Town with respect to subdivisions.
Because such review was de novo, the Board acted as a planning commission whose review of subdivisions is authorized by Conn. Gen. Stat.8-25 and 8-26.
The plaintiffs have brought this appeal of the Board's decision under Conn. Gen. Stat. 8-28, which provides that "any person aggrieved by an official action or decision of a planning commission . . . may appeal therefrom, within fifteen days from the date when notice of such action or decision was so published, to the superior court . . . ." An appeal from the decision of an administrative agency may only be taken advantage of by strict compliance with the statute creating the right to appeal. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377 (1988). Because the statutory provisions are mandatory and jurisdictional, failure to comply subjects the appeal to dismissal. Id. Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning and Zoning Board, 203 Conn. 317,321 (1987).
At the hearing before the court on October 24, 1990 Mr. Smith testified that he and his wife are the owners of the subject property. Record Item 7 is a copy of the deed conveying the property at 35 Strickland Road to the Smiths from Richard Cromwell, III, and Record Item 8 is a copy of the deed conveying an appurtenant strip of land to the Smiths from Duira B. Ward. It is found that based on the evidence in the record and the testimony of Mr. Smith, the plaintiffs are aggrieved and entitled to maintain this appeal. CT Page 3317
In reviewing the Board's decision, the court is not at liberty to substitute its judgment for that of the Board. Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-3 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily, or in abuse of its discretion, Id. at 573, and whether the record reasonably supports the conclusions reached by the agency. Burnham v. PZC, 189 Conn. 261, 265
(1988): Stankiewicz v. ZBA, 15 Conn. App. 729 (1988), aff'd., 211 Conn. 78
(1989).
The Board acted in its administration capacity when it reviewed plaintiffs' subdivision plan. See Reed v. PZC, 208 Conn. 431, 433 (1988). In such capacity the Board had no discretion to deny the plan if it conformed to the subdivision regulations. Id. If the plan did not conform to the regulations, it could be disapproved. Id. On the appeal the plaintiffs have the burden of proving that the Board's decision was erroneous. Burnham v. PZC, 189 Conn. 261, 266 (1983).
The plaintiffs raise several claims of error by the Board. First, they claim that their subdivision proposal conformed to the subdivision regulations, therefore the Board could not deny it. The plaintiffs argue that the Greenwich Municipal Code and subdivision regulations do not set forth precise, adequate or sufficient regulations to govern subdivisions in an historic district, such that an applicant is on notice that review of the plan will include a determination of its impact on the historic district. The Board rejected this claim, finding that plaintiffs' proposal did not meet the basic objective of the Town Plan of Development to preserve historic resources. Because one of the purposes of the subdivision regulations is the development of the Town in accordance with the Town Plan of Development, the Board contends that protection of the historic district obviously will be a concern when a subdivision plan in the district is being reviewed. The Board also rejected plaintiffs' claim that the regulations are imprecise, stating "the subdivision regulation referring to the plan of development [Section 6-260] should be sufficient to alert any reasonable person to examine the plan in this regard."
Plaintiffs next claim that the denial of their plan constitutes a taking of property without due process of law. The Board rejected this claim, concluding that because other alternatives for development of the property exist, the plaintiffs were not deprived of their development rights. The defendant Board argues that plaintiffs have failed to establish a diminution in the value of their property as a result of the decision, and further, only one proposal has been rejected, not all proposals.
Next, plaintiffs claim that the Board's conclusion that the subdivision would impair coastal views is erroneous, and that construction on other properties in the coastal zone has been allowed. They also contend that their proposal to construct a conforming single-family residential structure is exempt from coastal site plan review under section 6-111(c)A of the Greenwich Municipal Code, which allows exemptions for such construction beyond one hundred feet of the mean high tide line. This claim CT Page 3318 was also rejected, the Board finding that the subdivision would alter the natural features of vistas, thereby impairing that coastal resource. The Board argues that because of this finding, reasonable mitigation measures were required, which in this case include seeking alternatives to the proposed subdivision. The Board also argues that while an exemption from coastal review is permitted, in this case it would not be responsible to grant one to a plan not consistent with a policy of the Coastal Area Management Act.
Plaintiffs claim that the Board's decision was erroneous because their proposal would neither impair the historic character and appearance of the historic district nor violate the integrity of the district. They argue that neither state nor local law prohibits construction in historic district, nor gives the Historic District Commission the power to prevent subdivision or new construction. Plaintiffs contend that "[a] Planning and Zoning Commission may not deny an application on the grounds that such application was unacceptable to the [Historic District Commission]." The Board found that the subdivision would not preserve the historic streetscape, and therefore would impair the appearance and historic character of the historic district. The Board also stated that "[t]he residents who voted to form an Historic District were given assurance of preservation of their historic neighborhood even though they knew certain freedoms of future development would be regulated and restricted." The Board argues that construction of a new house on plaintiffs' front lawn would be a "severe blow" to the district, and "[i]f permitted, not only would it discourage preservation, but would be an open invitation to speculators seeking development. The public welfare and future generations deserve better."
Finally, plaintiffs raise the issues of reliance and estoppel. Their position is that the grant of preliminary approval by the Commission estops the Board from denying approval. They contend that prior to submitting their proposal to the Commission, they met with staff members to ascertain that their subdivision would be legal. They purchased additional property and altered their plan. When the plan was submitted, preliminary approval was granted subject to fourteen conditions. Plaintiffs claim that they were led to believe that if they met the fourteen conditions as well as the regulations, the final plan would be approved. They further argue that town officials were aware that a house was planned for Lot One when preliminary approval was granted, and that their reliance on the preliminary approval was justified.
The defendant argues the following points: First, plaintiff applied for a received "preliminary layout" approval under Section 6-265 of the subdivision regulations, which describes the same as "a helpful guide in the preparation of a subdivision plan." Second, the public hearings which were held on the application were not useless gestures or mere formalities, but were held to "afford interested parties an opportunity to be heard to give the Commission or Board . . . guidance." Further, "if in advance of the public hearing, the members felt bound by CT Page 3319 the preliminary layout regardless of what might be produced at the public hearing, it would be predisposition and the decision rendered would be invalid." Third, estoppel is a shield, not a sword, thus it is improperly invoked by plaintiff. Fourth, municipal estoppel can only result when it has been induced by an agent having authority. Here, the claim of estoppel could only lie, if at all, against the Commission, not against the defendant Board, which heard the matter de novo. Further, plaintiffs chose to file their application; they were not induced to do so. Fifth, plaintiffs waived any claim of estoppel against the Commission by petitioning the Board for review. Sixth, preliminary approval does not mean approval. It means if the conditions are net, the plan may be approved. In this case, plaintiffs did not meet all the conditions.
The first reason given by the Board for denying the Smiths' plan is that:
 The proposed subdivision did not meet the purposes of the Subdivision Regulations . . . . It does not conform to the Town of Greenwich Plan of Development in that it does not meet the basic objectives of preservation of historic and architectural resources. Furthermore, it does not preserve the natural features of the landscape; namely the historic streetscape.
(Return of Record #15). The Smiths argue against this reason on the grounds that the proposal met the requirements of the subdivision regulations as written and that the Town Plan of Development is not a regulation.
Section 6-260 of the Greenwich Municipal Code provides that one of the purposes of the subdivision regulations is to "further the orderly development of the Town in accordance with the Town Plan of Development (Return of Record #8n). The Town Plan of Development has as one of its "Basic Objectives" the preservation of historic resources. (Return of Record #tt). The Town Plan of Development also provides that "Greenwich has a rich . . . historical heritage that should be protected for the benefit and enlightenment of future generations," (Return of Record #tt, p. 15), and that "conserving the Town's . . . historical resources is a notably effective land use tool for preserving the essential character and spirit of the community." (Id. at p. 16). Other reference to the importance of historic factors appear in the Town Plan of Development. (See, e.g., p. 26, Return of Record #8n). An evaluation of historical factors is specifically mentioned in the Greenwich Subdivision Regulations, 6-266(a) 19, governing subdivisions in the coastal zone.
It is the opinion of the court that the plaintiffs' position is without merit. Not only do the subdivision regulations mention historic factors, but they state as a purpose the development of the town in accordance with the Town Plan of Development, which has preservation of historic resources as a basic objective. Further, given the established CT Page 3320 public policy favoring historic preservation, see Conn. Gen., Stat. 7-147a
et seq. AND Greenwich Municipal Code 6-307, and the plaintiffs' deed restriction, it is found that the Board did apply standards contained in the regulations to the subdivision, and plaintiffs had notice that historic factors would be considered.
The Board's finding that the proposal would impair the historic streetscape is supported by the record. The Smiths' side of Strickland Road is characterized by homes on lots with sweeping front lawns. (Return of Record #8e and 13y). The plaintiffs plan to convert their front lawn into a building lot and construct thereon a house with a thirty feet by forty feet footprint, and setbacks of twenty-five feet from the front property line, twenty feet from the south property line, and fifteen feet from a line of trees. (Return of Record #8e). These exhibits show that construction of a house on the front lawn would drastically alter the streetscape, and support the Board's conclusion in that regard.
The Board also cited the opposition of the Historic District Commission, which, among other things, oversees erection and alteration of buildings in the historic district. (Return of Record #15).
Although research has revealed no Connecticut cases addressing the precise issue in this case, Victorian Realty Group v. City of Nashua,534 A.2d 381 (1987) is on point. The issue in Victorian Realty Group was whether a planning board has the authority to reject a subdivision or resubdivision proposal for property in a historic district for reasons relating to the historic character and significance of the property.534 A.2d at 383. The plaintiff owned two contiguous lots, one containing a main building and a carriage barn, and the other a single family home. He had purchased the second lot in order to integrate it and the carriage house on the first lot into a single lot, which could be developed as a multi-unit apartment dwelling. Id. at 382. He applied for a lot line relocation, but after public hearings and input from the historic district commission, the planning board denied his application for the reason that the historic character and significance of the property required that the main house and carriage house stay together on one lot. Id. The Historic District Commission had recommended against the proposal, expressing concern about any visual separation of the two buildings, and that the conversion would necessitate additional parking which would detract from the residential character of the neighborhood. Id.
The city's regulations authorized the planning board to consider the proposal's effect on health, safety, nuisance, property values, aesthetics, traffic conditions and future highway improvements. Id. at 383. Historic preservation was part of the city's overall plan to promote general community welfare. Id.
Upholding the Board's denial, the court stated:
It would frustrate clearly expressed legislative CT Page 3321 intent if we were to hold that historic district commissions could not render, and planning boards could not consider, recommendations concerning applications for subdivision and site plan approval involving an historic district.
Id. at 383. Noting that the historic district commission members are must familiar with the historic district, and "uniquely suited to provide recommendations to the planning board," the court concluded that the board "may properly consider the historic district commission and may deny the plaintiffs' subdivision application based on factors related to the historic character and significance of the buildings at issue." Id. (emphasis added).
In A-S-P Associates v. City of Raleigh, 298 N.C. 207,258 S.E.2d 444 (1979) the court stated:
 It is widely recognized that preservation of the historic aspects of a district requires more than simply the preservation of those buildings of historical and architectural significance within the district . . . "just as important is the preservation and protection of the setting or scene in which [structures of architectural] and historical significance] are situated."
A-S-P Associates, 258 S.E. 2nd at 451, quoting Maher v. City of New Orleans, 371 F. Sup. 653, 663 (E.D. La. 1974) (emphasis added)
It is the opinion of this court that it should follow these cases, and hence the Board's consideration of, and decision based on, historic considerations was proper. The evidence on the record supports the the Board's finding that the proposed subdivision would impair the appearance of the historic streetscape. Therefore, it is found that the decision of the Board on this ground is not illegal or clearly erroneous.
As another reason for its decision, the Board stated:
 The property is located in the Coastal Zone of the Town. Therefore, it is subject to the requirements of the Coastal Area Management Act. The Board finds that the proposed subdivision plan would have an adverse impact on coastal resources because of the alteration of natural features of vistas. (Return of Record #15).
The decision of the Commission did not contain any reasons for denial related to the location of the property within the coastal zone (Return of Record #4), and the record of proceedings before the commission does not contain any evidence related to the coastal zone. CT Page 3322 The board, in its review of the subdivision plan, received the following evidence relative to the coastal zone: Exhibit 8j, photographs of coastal views impacted by the subdivision with a map showing sight lines from three neighboring properties; and testimony of Jim Sandy of the Planning and Zoning Commission. Mr. Sandy stated at pages 75-76 that coastal factors and policies of coastal area management must be considered in a decision on a subdivision in the coastal zone, and this includes consideration of historic factors and the significant alteration of natural vistas or viewpoints. Mr. Sandy stated: ". . . [I]f you place the house down on the street and if you go to the [neighbor's] house or even to the bungalow and try to get the same view of the water, you are not going to be able to do it."
Section 6-111 of the Greenwich Municipal Code established a coastal zone Overlay on the Town in accordance with Conn. Gen. Stat.22a-90 to 96, the Connecticut Coastal Management Act. Under subsection (c)A(4) an exemption from coastal site plan review may be given for construction of a conforming single-family residential structure beyond 100 feet of the mean high tide line. At the hearing on this appeal, Mr. Smith stated that coastal site plan review was conducted by the Commission on both the preliminary and final subdivision proposals. Section 6-111(c)B provides that "[a]n activity determined to be potentially inconsistent with any of [the standards in Sec. 6-111(c)D] shall have a formal review by the Commission." Among these standards are whether the proposed activity: (1) Is in accordance with the plan of development, (2) Preserves important open space and other features of the natural environment, (3) Does not materially obstruct significant waterfront views, and (4) Is consistent with all of the above purposes as authorized by the State Coastal Management Act. Greenwich Municipal Code 6-111(c)D. Among these purposes is to preserve and enhance coastal resources. Greenwich Municipal Code 6-111 (a)A(2). The Board found this purpose was defeated by the Smith's plan, which it found would alter the natural features of vistas.
In support of their position the Board also cites Conn. Gen. St. 22a-92 (b)(1)(J) which provides "Policies concerning development, facilities and uses within the coastal boundary are to require reasonable mitigation measures where development would adversely impact historical, archaeological or paleontological resources that have been designated by the state historic preservation officer." The Board contends that because alternatives to the proposed subdivision were available which would mitigate the impact on the views, these alternatives must be required.
 The Coastal Management Act delegates the administration of the state-wide policy of planned coastal development to local agencies charged with responsibility for zoning and planning decisions. See General Statutes 22a-105, 22a-106. The act envisages a single review process, during which proposals for development within the coastal boundary will simultaneously be reviewed for compliance with CT Page 3323 local zoning requirements and for consistency with the policies of planned coastal development. General Statutes 22a-109.
Vartuli v. Sotire, 192 Conn. 353, 358 (1984). Section 6-266 (a)(20) provides that "[f]or subdivisions within the coastal zone boundaries, the standards contained in the Coastal Area Management Act of the State of Connecticut shall be applied" in addition to the other standards applicable to subdivisions. Conn. Gen. Stat. 22a-106, the criteria and process for coastal site plans, provides in subsection (a) that a municipal board "shall determine whether or not the potential adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities are acceptable."
It is found that the only physical evidence presented to the Board relative to its conclusion that natural vistas would be altered by the subdivision is Exhibit 8j, showing the site lines to Mill Pond from homes on Strickland Road. This evidence does not support the Board's conclusion and the standard set forth in regulation 6-111(D)(3), that "significant" views would be "materially" obstructed by the subdivision has not been met . It is found that the photographs and map indicate that the planned house on Lot One would have minimal impact on existing views of the pond. Therefore, it is the opinion of the court that the record does not reasonably support this conclusion reached by the Board, and this reason is insufficient to support the decision to deny the subdivision. Defendant seems to believe that any development which changes a view necessarily has an adverse impact on that view, and such a position is contrary to the policy of the CAMA of promoting both the natural environment and economic growth. See Conn. Gen. Stat. 22a-92.
Because the Board's action is to upheld if any one of the stated reasons is sufficient to support the decision, see Primerica v. PZC, 211 Conn. 85, 96 (1989), it is found that the appeal be dismissed because the reasons relating to historic factors are sufficient to support the decision.
Judgment may enter accordingly.
JOHN J. P. RYAN, J.