[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
The plaintiffs, Thomas and Marguerite Heithaus, appeal the decision of the defendant, Greenwich Planning Zoning Commission, denying their application for a Historic Overlay Zone ("H.O.") designation and a related site plan and special permit that would allow the conversion of their single-family home, located at 7 Nedley Lane in the town of Greenwich, into a two-family home. The plaintiffs appeal pursuant to General Statutes § 8-8.
The plaintiffs own a 1902 Dutch Colonial home located in an R-7 zone at 7 Nedley Lane in the town of Greenwich. (Return of Record CT Page 4804 ["ROR"], Item 1a.) The plaintiffs filed an application to resubdivide their property into two lots, one containing 14, 156 square feet with the Dutch Colonial home and the other a vacant 7, 600 square-foot lot. (ROR, Items 38, 41.) According to the resubdivision plan, a portion of the home had to be removed in order to meet the setback requirements for the new lot, and this was proposed in the plan provided by the plaintiffs. (ROR, Item 41.) In April of 1997, the commission denied the plaintiffs' application to resubdivide their property. (ROR, Item 38.) The planning and zoning board of appeals overturned the commission's decision and granted the resubdivision in July 1997. (ROR, Item 39.) It was later discovered that the survey was incorrect and, even with the proposed removal of a section of the home, the plaintiffs still did not comply with the setback requirements for the new lot. (ROR, Items 12, 13.) It was determined that a larger portion of the house would have to be demolished in order to meet the five-foot side yard minimum setback requirement. (ROR, Item 12, Item 13, pp. 5-7.) To overcome this problem, the plaintiffs applied for a variance of the side yard requirements, but their application was denied due to a lack of hardship. (ROR, Item 40.) Also denied at that time was the plaintiffs' request for a variance allowing an increase in the size of their third-floor elderly conversion unit.[1] (ROR, Item 40.)
Pursuant to § 6-109.1 of the Greenwich building zone regulations, on May 11, 1998, the plaintiffs, through their agent, James G. Sandy, applied to the commission for a redesignation of their 7 Nedley Lane property from R-7 to R-7 H.O., a Historic Overlay.[2] (ROR, Item 1a.) At this time, the plaintiffs also submitted an application for a site plan approval and a special permit to allow them to convert the entire third floor of their home into a separate apartment. (ROR, Items 1a-n; see also Greenwich Building Zone Regs., § 6-109.1(5)(b).) In keeping with § 6.109.1(2), the commission referred the application to the historic district commission (HDC), which, in turn, recommended its approval. (ROR, Item 6.)
Following the recommendation by the HDC, the commission held a public hearing on he plaintiffs' application on August 4, 1998. (ROR, Item 13.) Sandy made a verbal presentation of the plaintiffs' plan and acknowledged that the purpose of the H.O. application was to convert the 700 square-foot maximum-sized third floor elderly apartment into an apartment that would take up the entire third floor, adding approximately 900 square feet. (ROR, Item 13, pp. 2-3, 10.) Many of the plaintiffs' neighbors, either individually or through :heir attorneys, voiced opposition CT Page 4805 to the application stating, among other things, that they did hot think that the home met the standards contained in § 6-109.1(3) of the regulations. (ROR, tem 13, pp. 10-33.) The plaintiffs were permitted by the commission to have one person speak n rebuttal. (ROR, Item 13, p. 34.)
At its September 10, 1998, meeting, the commission voted unanimously to deny the plaintiffs' H.O. application, as well as their related site plan and special permit applications. ROR, Item 32.) Notice of the commission's decision was published in the Greenwich Time on September 18, 1998. (ROR, Item 35.) On September 28, 1998, the plaintiffs received the Commission's decision letter sent via certified mail. (ROR, Item 36.)
The plaintiffs commenced this appeal by service of process on September 29, 1998, by leaving a true and attested copy of the original summons, appeal and bond in the hands of Carmella Budkins, Greenwich town clerk, and at the usual place of abode of Peter K. Joyce, chairperson of the commission. (Sheriff's Return.)
Appeals to the superior court from administrative agency decisions exist only under statutory authority. Simko v. ZoningBoard of Appeals, 206 Conn. 374, 377, 538 A.2d 202 :1988). "A statutory right of appeal from a decision of an administrative agency may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Internal quotation marks omitted.) Id. Such provisions "are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Id.
The question of aggrievement is essentially one of standing.McNally v. Zoning Commission, 225 Conn. 1, 5, 621 A.2d 279
(1993). Aggrievement is established if there is a possibility . . . that some legally protected interest . . . has been adversely affected. (Internal Quotation marks omitted.)Connecticut Resources Recovery Authority v. Planning ZoningCommission, 225 Conn. 731, 739 n. 12, 626 A.2d 705 (1993). Mere generalizations and fears, however, do not establish aggrievement. Caltabiano v. Planning Zoning Commission,211 Conn. 662, 668, 560 A.2d 975 (1989). An owner of the subject property is aggrieved and entitled ;o bring an appeal. WinchesterWoods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991).
The plaintiffs are the owners of the property at 7 Nedley Lane CT Page 4806 and have properly pleaded; (see complaint, § 14); and proven aggrievement by the submission of their property deed. (See Plaintiffs' Ex. 1.)
An appeal from a decision of a zoning board "shall be commenced by service of process . . . within fifteen days from the date the notice of the decision was published. . . . " General Statutes § 8-8(b). The chairperson of the board and the clerk of the municipality shall be included in such service. See General Statutes § 8-8(e).
On September 10, 1998, the board voted to deny the plaintiffs' application for an H.O. designation and related site plan and special permit. (ROR, Item 32.) Notice of the board's decision was published on September 18, 1998, in the Greenwich Time. (ROR, Item 35.) On September 29, 1998, the original summons, appeal and bond were served in the hands of Carmella Budkins, Greenwich town clerk, and at the usual place of abode of Peter K. Joyce, chairperson of the commission. (Sheriff's Return.) The appeal was timely filed and served upon the appropriate parties.
"General Statutes § 8-6 entrusts [a zoning] commission with the function of interpreting and applying its zoning regulations." Dimopoulos v. Planning Zoning Commission,31 Conn. App. 380, 383, 625 A.2d 236, cert. denied, 226 Conn. 917,628 A.2d 987 (1993). "[T]he trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 4t.2d 590 (1991). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." Francini v. ZoningBoard of Appeals, 228 Conn. 785, 791, 639 A.2d 519 (1994). The court may grant relief on appeal only where the local authority has acted illegally, arbitrarily, or in abuse of its discretion.Smith v. Zoning Board of Appeals, 227 Conn. 71, 80,629 A.2d 1089, cert. denied, 510 U.S. 1164, 114 S.Ct. 1190,127 L.Ed.2d 540 (1994); Raybestos-Manhattan Inc. v. Planning ZoningCommission, 186 Conn. 466, 470, 442 A.2d 65 (1982).
The plaintiffs appeal on the grounds that the denial of their application by the commission was illegal, arbitrary and in abuse of the commission's discretion in that: (1) the commission denied the plaintiffs' application despite the fact that the subject property met the standards contained in § 6-109.1(3) of the Greenwich zoning regulations; (2) the commission gave no valid reasons for denying the application; (3) the resolutions cited in CT Page 4807 the decision letter to the plaintiffs were never made, nor voted upon, by the commission at its September 10th meeting; (4) the commission violated the plaintiffs' due process by not allowing all witnesses the opportunity to rebut testimony; and (5) the commission held an illegal preliminary meeting to discuss the plaintiffs' application.
The outcome of this appeal rests, in large part, upon the determination of whether the denial of the plaintiffs' H.O. zone application fell within the commission's broad legislative powers or within the commission's administrative powers. The plaintiffs characterize the review and subsequent denial of their application as an administrative action, akin to a special permit or exception procedure, while the commission characterizes it as a legislative action, akin to a floating zone procedure.
The court must first analyze the difference between the administrative function of a special permit or exception review and the legislative function of a floating zone review and determine which is more akin to the historic overlay zone at issue within this appeal.
The terms "special permit" and "special exception" have the same legal import and are used interchangeably. A.P. W. HoldingCorp. v. Planning Zoning Commission, 167 Conn. 182, 185,355 A.2d 91 (1974); Whisper Wind Development Corporation v. Planning Zoning Commission, 32 Conn. App. 515, 520, 630 A.2d 108, aff'd229 Conn. 176, 640 A.2d 100 (1994). A special exception or a special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. SeeA.P. W. Holding Corp. v. Planning Zoning Commission, supra,167 Conn. 185; Whisper Wind Development Corp. v. Planning Zoning Commission, supra, 32 Conn. App. 520.
"The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated because of the particular topography, traffic problems, neighboring uses, etc., of the site." (Internal quotation marks omitted.) Whisper Wind v.Planning Zoning Commission, supra, 32 Conn. App. 519. The proposed use must satisfy the standards set forth in the regulations as well as any conditions necessary to protect the public health, safety, convenience and property values.Housatonic Terminal Corp. v. Planning Zoning Board,
CT Page 4808168 Conn. 304, 307, 362 A.2d 1375 (1975); A.P. W. Holding Corp. v.Planning Zoning Commission, supra, 167 Conn. 185. A special exception may be granted conditionally, when the zoning authority has been given the power to do so by the regulations, and so long as the conditions do not alter the requirements of the regulations. Beckish v. Planning Zoning Commission,162 Conn. 11, 15, 291 A.2d 208 (1971); Lurie v. Planning ZoningCommission, 160 Conn. 295, 304, 278 A.2d 799 (1971); Michel v.Planning Zoning Commission, 28 Conn. App. 314, 327,610 A.2d 720, cert. denied, 223 Conn. 923, 614 A.2d 823 (1992); Hochbergv. Zoning Commission, 24 Conn. pp. 526, 529, 589 A.2d 889 (1991).
When ruling upon a special exception or permit, a zoning authority acts in an administrative capacity, and its function is simply to determine whether the proposed use is expressly permitted and whether the standards set forth in the regulations and General Statutes § 8-2 are satisfied. Double I LimitedPartnership v. Planning Zoning Commission, 218 Conn. 65, 72,588 A.2d 624 (1991); Housatonic Terminal Corp. v. Planning Zoning Board, supra, 168 Conn. 307; A.P. W. Holding Corp. v.Planning Zoning Commission, supra, 167 Conn. 185; see alsoWhisper Wind Development Corporation v. Planning ZoningCommission, supra, 32 Conn. App. 524. Where the regulations and statutes are satisfied, the board has no discretion to deny a special exception. Felsman v. Zoning Commission,31 Conn. App. 674, 678, 626 A.2d 825 (1993); Daughters of St. Paul. Inc. v.Zoning Board of Appeals, 17 Conn. App. 53, 56, 549 A.2d 1076
(1988).
In an appeal from an administrative zoning decision, Connecticut courts have adopted the substantial evidence rule. See Kaufman v. Zoning Commission of the City of Danbury,232 Conn. 122, 151-53, 653 A.2d 798 (1995). Under this rule, any administrative decision of the commission must be based upon enough evidence in the record to justify, if the case were tried to a jury, the court's refusal to direct a verdict because of a question of fact for the jury. See id. However, "evidence of the individual views of one member is not available to show the reasons actuating the board or the grounds of its decision. These can only be shown by a vote of the board." (Internal quotation marks omitted.) Caserta v. Zoning Board of Appeals,23 Conn. App. 232, 238, rev'd on other grounds, 219 Conn. 352, 593 A.2d 118
(1991); Welch v. Zoning Board of Appeals, 158 Conn. 208, 214,257 A.2d 795 (1969). Nonetheless, where the zoning authority has not provided the reasons for its decision, the court must review the record to determine whether the decision is supported by CT Page 4809 substantial evidence in the record. A.P. W. Holding Corp. v.Planning Zoning Board, supra, 167 Conn. 186; Morningside Assn.v. Planning Zoning Board, 162 Conn. 154, 156, 292 A.2d 893
(1972); see also Wnuk v. Zoning Board of Appeals, 225 Conn. 691,694-95, 626 A.2d 698 (1993); Schwartz v. Planning ZoningCommission, 208 Conn. 146, 152, 543 A.2d 1339 (1988).
The rules of statutory construction apply to the interpretation of local regulations, and the zoning authority's action is arbitrary and illegal if the regulation in question is construed beyond the fair import of its language. Double I Limited Partnershipv. Planning Zoning Commission, supra, 218 Conn. 72-73. The court must first look to the language of the regulation for legislative intent; if the language is unclear, the court can look to its purpose. Id., 73. The burden of proof is on the appellant to show that the zoning authority acted improperly.Pleasant View Farms Development. Inc. v. Zoning Board of Appeals,218 Conn. 265, 269-70, 588 A.2d 1372 (1991).
"A local zoning authority acting within its legislative capacity is endowed with the freedom to act or not act as it deems appropriate to meet the needs and demands of the body politic, as it determines those needs and demands." HomartDevelopment Co. v. Planning Zoning Commission,26 Conn. App. 212, 216, 600 A.2d 13 (1991). When acting in its legislative capacity, a commission has broad discretion and is entitled to take into consideration facts learned through personal knowledge or observation in order to develop responsible planning for the present and future development of the community. Sowin Associatesv. Planning Zoning Commission, 23 Conn. App. 370, 375,580 A.2d 91, cert. denied, 216 Conn. 832, 583 A.2d 131 (1990).
When a local zoning authority enacts a zone change, it is acting in a legislative capacity. Wisniewski v. Zoning Board,6 Conn. App. 666, 667, 506 A.2d 1092 (1986). "[The] broad legislative discretion applicable to the approval of a zone change is equally applicable to the enial of a requested zone change, and will not be disturbed on appeal unless the zoning authority has acted illegally or arbitrarily and has thus abused the discretion vested in it." Homart Development Co. v. Planning Zoning Commission, supra, 26 Conn. App. 216-17.
"A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures must be pre-approved. It is legislatively predeemed compatible with the area in which it eventually locates if CT Page 4810 specified standards are met and the particular application is not unreasonable. . . . It differs from the traditional "Euclidean' zone in that it has no defined boundaries and is said to "float' over the entire area where it may eventually be established." (Citations omitted.) Sheridan v. Planning Board, 159 Conn. 1, 16,266 A.2d 396 (1969). "The floating zone is a zoning district that is not mapped when adopted; at some later date the previously defined zone will be placed on the ground, usually at the request of the affected landowner(s)." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) § 3.C.2b, p. 70.
"[W]hen a zoning board grants an application requesting it to apply a floating zone to a particular property, it alters the zone boundaries of the area by carving a new zone out of an existing one. . . . Accordingly, an application to apply a floating zone to a particular property . . . is a request for a zone change." (Citations omitted; internal quotation marks omitted.) Homart Development Co. v. Planning Zoning Commission,
supra, 26 Conn. App. 215.
The Connecticut Supreme Court compared the review of a floating zone application to that of a special exception or permit and held that the commission has wide discretion in reviewing a floating zone application. See Sheridan v. Planning Board, supra,159 Conn. 16. "While the concept of a floating zone is similar to the established power of a zoning board to grant special exceptions, the two types of regulation may be distinguished. The special exception is the product of administrative action, while the floating zone is the product of legislative action.[3] 1 Anderson, American Law of Zoning [§] 5.16. Further, if a landowner meets the conditions set forth for a special exception, the board is bound to grant one, but in the case of a floating zone discretion is maintained and additional limitations may be imposed — more control is retained by the zoning board because it is acting legislatively." (Footnote added.) Id.
The Greenwich H.O. zone, § 6-109.1 of the Greenwich building zone regulations, does not fit squarely into either of the designations overviewed above. It is neither a typical special permit, nor a typical floating zone.
The H.O. zone is similar to a floating zone in that its location is undetermined, and the type of property to which such a designation would be granted is pre-approved. Compare Sheridanv. Planning Board, supra, 159 Conn. 16, with § 6-109.1(3) of the Greenwich building zone regulations. Unlike a typical CT Page 4811 floating zone, however, the property in an H.O. zone continues to bear its original zone designation, but adopts an overlay. See Greenwich Building Zone Regs., § 6-109.1. All of the regulations, responsibilities and controls associated with the underlying zone continue to apply to the property except as amended by § 6-109.1. See Greenwich Building Zone Regs., § 6-109.1(4).
A review of the regulations in the present case reveals that if a property is granted an H.O. designation, there are few additional regulations, responsibilities or controls placed upon the site unless the owner applies for a special permit that would allow additional uses of the property not normally allowed in the underlying zone but allowed in the overlay zone. In order for the owner to acquire the special permit, the owner must grant a perpetual preservation easement to the town. See Greenwich Building Zone Regs., § 6-109.1(5)(b)(2).
In comparing the H.O. zone to the special permit process, it is submitted that we find more similarities. The two appear similar in that a special status is given to a property granted the overlay that other properties in the area may or may not have. The property must satisfy specific standards set forth in the regulations in order to acquire H.O. status, and, once acquired, special uses are allowed, by right, upon application. CompareWhisper Wind v. Planning Zoning Commission, supra,32 Conn. App. 519, and Housatonic Terminal Corp. v. Planning ZoningBoard, 168 Conn. 304, 307, 362 A.2d 1375 (1975), and A.P. W.Holding Corp. v. Planning Zoning Commission, supra,167 Conn. 185, with § 6-109.1 of the Greenwich building zone regulations.
Upon review of the town's regulations, it appears that the intent of the H.O. zone is twofold. It gives an owner of a historic site the ability to use the property in a more intense (and more economic) manner, while, at the same time, giving the town a perpetual easement guaranteeing that the historic property will, forever, be properly maintained. This interpretation seems to coincide with the stated purpose found in the regulations which provides that the zone is "established for the purposes of encouraging the protection, enhancement, perpetuation and use of buildings and structures . . . having special historical or aesthetic value which represent or reflect elements of the Town's cultural, social, economic, political and architectural history." Greenwich Building Zone Regs., § 109.1(1). CT Page 4812
Although neither party in the present appeal cites to any authority that specifically supports its individual characterization of the H.O. as being akin to either a special permit or a floating zone, a thorough review of Connecticut case law has offered one case seemingly on point. In Powers v. CommonCouncil, 154 Conn. 156, 222 A.2d 337 (1966), a somewhat similar debate occurred in the denial of an "area designation."
In Powers, the town of Danbury had a zoning regulation that provided that any area in the district, "upon the recommendation of the City Planning Commission, may be designated by the Common Council, after a public hearing, as a multiple housing project area, to which the regulations provided in this ordinance for the district in which it is located shall continue to apply." (Internal quotation marks omitted.) Powers v. Common Council,
supra, 154 Conn. 158. The court explained that the effect of this regulation was that "no property within [a] district may be put to that use unless the property is first recommended by the planning commission and designated by the council for that use." Id., 159. Although the regulation never used the term special permit or special exception, the court held that "[t]he nomenclature is immaterial so long as the effect is the same." Id. Concluding that the "area designation process is in effect a procedure for the granting of a special permit [the court held that] . . . [w]hen the council was considering the application for an area designation, it was acting administratively." Id., 160.
The historic overlay designation in the Greenwich regulations is very similar to the area designation discussed in Powers. Both, the regulations in Powers and in the present case, upon the recommendation of the planning commission and approval of the zoning body, grant a new designation to a site while keeping the underlying zone or district intact.
The function of the commission in this instance, as in Powers, supra, is an administration function, akin to a special permit or exception, and, as such, is subject to the substantial evidence rule. See Kaufman v. Zoning Commission of the City of Danbury,
supra, 232 Conn. 151-53. Hence, the commission's function was simply to determine whether the proposed use was expressly permitted and whether the standards set forth in the regulations were satisfied. See Double I Limited Partnership v. Planning Zoning Commission, supra, 218 Conn. 72; Housatonic Terminal Corp.v. Planning Zoning Board, supra, 168 Conn. 307; A.P. W.Holding Corp. v. Planning Zoning Commission, supra, CT Page 4813167 Conn. 185. Where the regulations and statutes are satisfied, the board has no discretion to deny a special permit or exception. SeeFelsman v. Zoning Commission, supra, 31 Conn. App. 678; Daughtersof St. Paul, Inc. v. Zoning Board of Appeals, supra,17 Conn. App. 56.
The standards set forth for granting an H.O. designation to a site can be found in § 6-109.1(3) of the Greenwich building zone regulations. The commission may grant the H.O. designation to a property that contains a structure at least forty years old and is notable, either architecturally or historically, in accordance with any or all of the specified standards. See Greenwich Building Zone Regs., § 6-109.1(3). These standards include the uniqueness of the structure, its historical significance, the architectural distinctiveness and whether the structure constitutes a unique estate setting that is significant to the town's history. See Greenwich Building Zone Regs., § 6-109.1(3). Before the commission considers an application, however, it must obtain an evaluation along with recommendations from the historic district commission and any other consultants it deems appropriate. See Greenwich Building Zone Regs., § 6-109.1(2). In the present case, the commission asked the sewer superintendent, the engineering division, the building department, and the historic district commission for comments on the proposed application. (ROR, Item 2.)
The historic district commission recommended approval of the 11.0. zone application stating that "the Commission ultimately determined that while 7 Nedley Lane, in its current condition, might not merit special consideration if it was placed among similar, though better preserved, structures, the fact it stands out from its neighbors warrants preservation. As it is now, the property causes a viewer to compare the present, as represented by the house's neighbors, with the past. It makes one wonder what changes the area has gone through." (ROR, Item 6.)
The additional departmental comments sought by the commission reported as follows. The sewer superintendent filed a report stating only that a revised sewer permit was required and had to be obtained prior to the issuance of a building permit. (ROR, Item 3.) The engineering division reported that it approved the project and had no comments in relation thereto. (ROR, Item 10.) The building department reported that the site plan meet the requirements of the building regulations, except that the survey provided by the applicant was incorrect and a larger portion of the house had to be removed in order to meet the setback CT Page 4814 requirements. (ROR, Item 12.) Each of these reports related specifically to the site plan and special permit applications, not the H.O. zone designation. It is apparent from reading the regulations that a party could apply for an H.O. zone designation and not seek site plan and special permit approval. See Greenwich Building Zone Regs., § 6-109.1. These reports, though not necessarily unfavorable to the applicant, should not be considered when ascertaining whether the site meets the standards for an H.O. zone. The appropriate report for consideration is the report of the historic district commission.
The historic district commission recommended approving the plaintiffs' application because it determined that 7 Nedley Lane stands out from the neighboring properties and warrants preservation. (ROR, Item 6.) The historic district commission also found that the property causes the viewer to make a historical comparison between the present, as represented by the neighboring homes, and the past, as represented by 7 Nedley Lane. (ROR, Item 6.) The findings of the historic district commission place the plaintiffs' property within the standards set out in subsections 1-4 of § 6-109.1(3)(a) of the regulations.
The commission denied the plaintiffs' H.O. zone application because it had problems with the site plan/special permit application that accompanied it. However, although both application were filed simultaneously, it is also submitted that the H.O. zone application and the special permit application are not one and the same, and the commission should have considered the H.O. zone application before, and independent of, the special permit application.
Although there was much neighborhood opposition to this proposal, the record reveals nothing to contradict the findings of the historic district commission that this property met at least one, if not all, of the standards of § 6-109.1(3)(a) and should have been granted an H.O. zone designation. The plaintiffs have met their burden of proof that the commission acted illegally, arbitrarily or in abuse of its discretion in denying their application for an H.O. zone designation.
In addition to claiming that the commission acted improperly in denying their H.O. zone designation, the plaintiffs also claim that the commission acted improperly in denying their site plan and special permit application. Throughout the briefs of both parties, these two applications (H.O. zone and site plan/special permit) are intertwined. They were further intertwined throughout CT Page 4815 the public hearing and in the subsequent decision meeting. (See ROR, Items 13, 32.) The two applications are different and although the plaintiffs could not get the special permit without the H.O. zone designation, they could get the H.O. zone designation without the special permit. See Greenwich Building Zone Regs., § 6-109.1.
Having denied the plaintiffs' H.O. zone designation, the commission denied the plaintiffs' site plan/special permit application, too. (ROR, Item 32, p. 13-14.) Commission member Siefert moved, and it was approved, that "the special permit and site plan be denied because we have denied the rezoning." Id. Accordingly, the commission never ruled on the merits of the application. See id. Although the plaintiffs urge the court to order the issuance of the site plan and special permit approvals, it is submitted that the court cannot do so. See Berlin BattingCages v. Berlin Planning Zoning, Superior Court, judicial district of Hartford at Hartford, Docket No. 579882 (May 12, 1999, Booth, J.) "The local agency has never reviewed the plan under appropriate regulations and the court is not free to substitute its judgement for the judgement of the local agency." Id. "When agency action is overturned, as here, because of invalid or insufficient findings, we have held that a court must ordinarily remand the matter under consideration to the agency for further consideration. . . . (Citations omitted; internal quotation marks omitted.) Gorman Construction Co. v. Planning Zoning Commission, 35 Conn. App. 191, 199, 644 A.2d 964 (1994).
Having found that the commission acted improperly in denying the plaintiffs' H.O. zone application, the appeal is sustained and the matter remanded to the commission for proper consideration of the site plan/special permit application in accordance with § 6-109.1(5) of the Greenwich building zone regulations.
The plaintiffs have met their burden of proof that the commission acted illegally, arbitrarily or in abuse of its discretion in denying their application for a historic overlay. Because the commission failed to determine the merits of the plaintiffs' site plan and special permit applications because of their denial of the historic overlay, the appeal is sustained and the case remanded for proper consideration of the related site plan and special permit applications in accordance with the Greenwich zoning regulations.
HICKEY, J. CT Page 4816